[Civ. No. 17959. Second Dist., Div. Three. Apr. 19, 1951.]

EDITH E. OSBORN, Appellant, v. CITY OF WHITTIER, Respondent.

610

Clay & Staples, Herbert G. Staples and C. F. Zimmerman for Appellant.

Thomas W. Bewley, City Attorney, Jennings & Belcher, R. P. Jennings and Stevens Fargo for Respondent.

VALLEE, J.—Appeal by plaintiff from a judgment of dismissal entered pursuant to an order sustaining a demurrer of defendant city of Whittier to the complaint without leave to amend in an action for damages for injury to property.

The complaint alleged these facts:

The city of Whittier maintained, managed, and operated a rubbish disposal dump within the city near Savage Canyon for its use, convenience, and benefit, and that of its residents.

Plaintiff was the owner of property on Turnbull Canyon Road in Puente which was improved with bearing avocado trees, a sprinkler system, fences, and tree props. On June 22, 1949, there was fruit on the trees.

Defendant, over a period of years and particularly on June 21 and 22, 1949, when a high wind was blowing, maintained the rubbish disposal dump in a dangerous condition, permitting the continued burning of rubbish therein, under all weather conditions, without supervision. The dangerous condition was known to defendant for a long period of time prior to June 21 and 22, 1949. Defendant neglected to take any measures to remedy the condition. (The specific allegations are set forth in the margin.[1])

[1] "That said fire and the loss and damage to plaintiff by reason thereof, was a direct and proximate result of the negligent failure and neglect to remedy the dangerous and defective condition of the said Disposal Dump by the defendants and each of them, as is more particularly set forth as follows: that the defendants and each of them, and particularly the defendant CITY OF WHITTIER, and the City Council thereof, maintained said Rubbish Dump in Savage Canyon in the City of Whittier; that the defendants and each of them permitted, allowed and failed to prevent the continual and habitual burning of rubbish over a long period of years, at all hours of the day and night under all weather conditions without adequate or proper contol or supervision or fire prevention measures; that the defendants and each of them failed to attend or control said Dump while trash and materials were burning; that during said time the defendants and each of them permitted and allowed fires to burn in said dump without employees or other personnel present to control and supervise said burnings; that on or about the 21st and 22nd days of June 1949, the defendants and each of them

On June 22, 1949, a fire started in the rubbish disposal dump and spread through and over surrounding property to plaintiff's property, burned and destroyed 248 avocado trees, full grown and bearing, and the crops thereon, damaged the sprinkler system and fence posts, and destroyed 750 tree props, to her damage in the sum of $21,130.97. The fire loss and damage was a proximate result "of the negligent failure and neglect to remedy the dangerous and defective condition" of the rubbish disposal dump.

On September 16, 1949, plaintiff filed with the clerk and city council of defendant a written claim for damages. A copy of the claim is made a part of the complaint.

The question for decision is whether the complaint states facts sufficient to constitute a cause of action against the city of Whittier. The controlling statutes in effect on June 22, 1949—the Public Liability Act of 1923 and The Claims Act of 1931—in pertinent part read: "Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable

---

allowed and permitted fires to burn and continue to burn in said Dump; that on said dates said fire was allowed to continue to burn without supervision or attendance or fire equipment present to control said burning; that a high wind was blowing on said dates at said time and place; that dry and combustible brush materials and scrub undergrowth were allowed by said defendants to remain on adjoining premises immediately adjacent thereto; that the said dangerous, hazardous and defective conditions of said Dump and the portion thereof as aforesaid, were well known to the defendants and each of them long prior to and at the time of the said 21st and 22nd days of June 1949; that said defendants and each of them, failed to take any measures whatsoever to remedy said dangerous and defective operation and condition of said Dump; that as a direct and proximate result of said failure and neglect of the defendants and each of them, as aforesaid, fire spread from said Rubbish Disposal Dump to the premises of the plaintiff herein, and as a direct and proximate result of said spread of fire plaintiff's premises and property sustained severe damages and destruction as hereinafter set forth."

time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition." (Stats. 1923, ch. 328, § 2, p. 675.)[2] "Whenever it is claimed that any person has been injured or any property damaged as a result of the dangerous or defective condition of any public street, highway, building, park, grounds, works or property, a verified claim for damages shall be presented in writing and filed with the clerk or secretary of the legislative body of the municipality, county, city and county, or school district, as the case may be, within ninety days after such accident has occurred. Such claim shall specify the name and address of the claimant, the date and place of the accident and the extent of the injuries or damages received." (Stats. 1931, ch. 1167, § 1, p. 2475.) The 1923 and 1931 statutes are now embodied in sections 53050-53056 of the Government Code.

Defendant states that plaintiff's property was located several miles from the dump. We are unable to ascertain the distance from examination of maps. For the purpose of this opinion only, we will assume that defendant's statement is correct.

Defendant argues that the maintenance, in a dangerous condition, of a rubbish disposal dump, where rubbish is burned, cannot give a right of action to a property owner whose property, *several miles away from the dump,* is damaged by a fire from the dump which ignited grass and brush and spread to plaintiff's property; that what is meant by "dangerous or defective condition" is that it "is dangerous to persons who might be expected to come in contact with the defective or dangerous condition or to property which might reasonably be expected to be injured thereby"; that there must be a close relation between the dangerous condition and the property damaged.

██ The Public Liability Act of 1923 imposed on a munici-

[2]The old maxim that the King can do no wrong—immunity of the sovereign for the torts of its officers and employees when acting in a governmental capacity—an unjust relic of the dark ages, is rapidly passing into oblivion. (See "Should California Accept Tort Liability?" by Thomas H. Kuchel, State Controller of California, XXV Cal. State Bar J. 146; 22 So.Cal.L.Rev. 78; 34 Yale L.Jour., 1-45, 129-143, 229-258; 35 Yale L.Jour. 150; 36 Yale L.Jour. 1; 56 Yale L.Jour. 534; 30 Harv.L.Rev. 20; 4 Ill.L.Quar. 28; 4 Wyo.L.Jour. 96; 11 Am. Bar Assn.Jour. 495; Federal Tort Claims Act of 1946, 28 U.S.C.A. §§ 2671-2680, 60 Stats. 843 as amended; *United States* v. *Yellow Cab Co.,* —— U.S. —— [71 S.Ct. 399, 95 L.Ed. ——, ——] particularly footnote 8.)

pality liability for injury or damage resulting from a dangerous condition of property. If the officers or employees of the municipality had actual or imputed knowledge or notice of the dangerous condition and neglected to remedy it within a reasonable time after knowledge or notice, or neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as might be reasonably necessary to protect the public against such dangerous condition, liability ensued. (*Fackrell* v. *City of San Diego*, 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 625]; *Gibson* v. *County of Mendocino*, 16 Cal.2d 80 [105 P.2d 105]; *Arellano* v. *City of Burbank*, 13 Cal.2d 248 [89 P.2d 113]; *George* v. *City of Los Angeles*, 11 Cal.2d 303 [79 P.2d 723]; *George* v. *City of Los Angeles*, 51 Cal.App.2d 311 [124 P.2d 872]; *Allen* v. *City of Los Angeles*, 43 Cal.App.2d 65 [110 P.2d 75]; *Bauman* v. *San Francisco*, 42 Cal.App.2d 144 [108 P.2d 989]; *Sandstoe* v. *Atchison, T. & S. F. Ry. Co.*, 28 Cal.App.2d 215 [82 P.2d 216].)

In *George* v. *City of Los Angeles*, 11 Cal.2d 303, 308 [79 P.2d 723], it was held that if a municipality creates a dangerous condition of its property, it is liable for any injuries to persons or property resulting from such condition provided it had knowledge thereof and neglected to remedy said condition within a reasonable time after acquiring such knowledge; that this liability is based upon negligence; and that the question of the negligence of the municipality is for the determination of the jury. (See, also, *Brooks* v. *City of Monterey*, 106 Cal.App. 649, 654 [290 P. 540]; *Sandstoe* v. *Atchison, T. & S. F. Ry Co.*, 28 Cal.App.2d 215, 218 [82 P.2d 216].)

If the dangerous condition is the proximate cause of the injury or damage, liability ensues. (*Bosqui* v. *San Bernardino*, 2 Cal.2d 747, 760, 761 [43 P.2d 547]; *Lorraine* v. *City of Los Angeles*, 55 Cal.App.2d 27, 30 [130 P.2d 140].)

"Proximate cause" means that the injury or damage was the natural and probable consequence of the wrongful or negligent act or omission and the ability on the part of a person of ordinary intelligence reasonably to have foreseen or anticipated the harmful consequence of his act or omission. (*Chutuk* v. *Southern Counties Gas Co.*, 21 Cal.2d 372, 380 [132 P.2d 193]; *Weck* v. *Los Angeles County Flood Control Dist.*, 80 Cal.App.2d 182, 189 [181 P.2d 935]; *Johnson* v. *Union Furniture Co.*, 31 Cal.App.2d 234, 238 [87 P.2d 917].)

The precise consequence of a wrongful act or omission

need not have been foreseeable. The question is not whether defendant did foresee, or by the exercise of ordinary care should have foreseen, the identical consequence that happened, in order that its act or omission be a proximate cause of the injury or damage. The question is whether it was reasonably foreseeable that injury or damage would likely occur. Defendant's duty is measured by the standard of foreseeability of injury or damage to the eyes of a reasonably prudent person having regard for the accompanying circumstances. (*Werkman* v. *Howard Zink Corp.*, 97 Cal.App.2d 418, 425 [218 P.2d 43].) ■ Whether the dangerous condition was a proximate cause of the damage is a question of fact. (*Barker* v. *City of Los Angeles*, 57 Cal.App.2d 742, 748 [135 P.2d 573]; *Allen* v. *City of Los Angeles*, 43 Cal.App.2d 65, 67 [110 P.2d 75]; *Bauman* v. *San Francisco*, 42 Cal.App.2d 144, 154 [108 P.2d 989].)

■ Though an act or omission be removed from the injury and damage by intermediate causes or effects, yet if, in a natural and continuous sequence, unbroken by any superseding cause, it produces that injury or damage, and if without it the injury would not have happened, it is a proximate cause of such injury or damage. ■ Proximity in point of time or space is no part of the definition. ■ That is of no importance except as it may afford evidence for or against proximity of causation. (*Hyer* v. *Inter-Insurance Exchange*, 77 Cal.App. 343, 347 [246 P. 1055].) ■ Whether defendant should have foreseen that a fire from the dump might spread to adjoining property and thence to property more distant, is a question of fact. (*Adams* v. *Southern Pac. Co.*, 4 Cal.2d 731, 738 [53 P.2d 121]; *Bauman* v. *San Francisco*, 42 Cal.App.2d 144, 154 [108 P.2d 989]; *Butcher* v. *Vaca Valley & C. L. R. Co.*, 67 Cal. 518, 521 [8 P. 174]; *Henry* v. *Southern Pac. Co.*, 50 Cal. 176, 183; *Paiva* v. *California Door Co.*, 75 Cal.App. 323, 331 [242 P. 887].) ■ The allegation that the damage was a direct and proximate result of the dangerous condition of the dump is a sufficient allegation of proximate cause. (*Guilliams* v. *Hollywood Hospital*, 18 Cal.2d 97, 103 [114 P.2d 1].)

■ In collecting garbage, trash and other refuse, hauling it to its dumping ground and disposing of it by fire, defendant was exercising a governmental function which was not completed until the ashes were disposed of. (*Pittam* v. *City of Riverside*, 128 Cal.App. 57, 62 [16 P.2d 768].) In Pittam, the city maintained a dumping and burning ground similar

to that alleged to have been maintained by defendant city of Whittier. The plaintiff's property was located more than 1,000 feet from the burning area. A fire from the dump spread across intervening lands to that of plaintiff, destroying an apiary. The court held, page 65: "It is evident from the evidence that the general plan of operation of the dumping ground adopted by the city provided for the consumption of garbage, trash and other inflammable refuse by open fires. It is undisputed that winds from the north occasionally blew with considerable intensity at certain times of the year and carried charred and partly burned paper onto the property of respondent and his near neighbors. If the proper municipal authorities had notice of a dangerous or defective condition of the dumping ground prior to the fire and permitted such condition to continue for an unreasonable time; if the fire which consumed rspondent's property had spread or was carried from a fire on the dumping ground burning at a place, or one of the places, where fires were to be kindled in accordance with the plan of operation established by the municipal authorities and in operation at the time of the destruction of respondent's property; and if the fire was not spread from one wrongfully started by another agency such as trespassers on the city property, then we are of the opinion that a dangerous or defective condition of the public grounds, works or property of the City of Riverside existed which would render it liable for damages to the property of respondent. (*Huff* v. *Compton Grammar School Dist.*, 92 Cal.App. 44 [267 P. 918].)" The judgment for plaintiff was reversed because the trial court had instructed the jury on general negligence. Defendant suggests that the quoted portion of the opinion was dictum. We think not. In any event it was a correct statement of the law.

 It is not necessary for a plaintiff to show, in order to recover for damage caused by a fire, that the fire was directly communicated to the property consumed; there may be a recovery where the fire burned across intervening lands before reaching the property damaged for which recovery is sought, if there was no superseding cause between the original wrong and the loss complained of. Time, distance, and the fact that the fire burned over intervening tracts of land, do not affect the question of defendant's liability except insofar as they relate to the probability of a superseding cause and the unforeseeability to an intelligent person that injury or

618

damage would accrue as the result of the act or omission causing the fire. ▮▮▮ Generally, a fire, however far it may go, is one continuous fire—the same fire—and is the proximate cause of all the injuries and damage it may produce in its destructive march, whether it goes to abutting property or several miles. (22 Am.Jur. 625, § 47; *Irelan-Yuba etc. Min. Co.* v. *Pacific G. & E. Co.,* 18 Cal.2d 557, 560, 565 [116 P.2d 611]; *Butcher* v. *Vaca Valley & C. L. R. Co.,* 67 Cal. 518 [8 P. 174]; *Henry* v. *Southern Pac. Co.,* 50 Cal. 176, 182, 183; *Viera* v. *Atchison etc. Ry. Co.,* 10 Cal.App. 267 [101 P. 690]; *Paiva* v. *California Door Co.,* 75 Cal.App. 323, 327, 331 [242 P. 887]; *Kennedy* v. *Minarets & Western Ry. Co.,* 90 Cal.App. 563, 566, 572 et seq. [266 P. 353]; *Haverstick* v. *Southern Pac. Co.,* 1 Cal.App.2d 605, 607, 611 et seq. [37 P.2d 146]; *Dippold* v. *Cathlamet Timber Co.,* 111 Or. 199 [225 P. 202]; Prosser on Torts, 349, § 48.) In *Henry* v. *Southern Pac. Co., supra,* it was said, page 183: "[C]onsidering the long dry season of California and the prevalence of certain winds in our valleys . . . it may be left to a jury to determine whether the spreading of a fire from one field to another is not the natural, direct or proximate consequence of the original firing."[3]

*Miller* v. *City of Palo Alto,* 208 Cal. 74 [280 P. 108], and *Hanson* v. *City of Los Angeles,* 63 Cal.App.2d 426 [147 P.2d 109], relied on by defendant, are not in point. The acts there relied on were single acts of negligence in the performance of a governmental function and not the maintenance of a dangerous or defective condition.

▮▮▮ We hold, therefore, that liability is not, as a matter of law, dependent upon proximity of the damaged property to the dangerous condition, but is dependent upon the dangerous condition being a proximate cause of the damage, and that the question is one of fact.

Defendant asserts that the verification of the claim is insufficient in that "It nowhere purports to contain a statement over the signature of Edith E. Osborn that she swears to anything. She merely states certain things. The statement does not purport to follow the requirements of the Code Sections as to an affidavit of verification." ▮▮▮ The verifica-

---

[3]A person who allows a fire kindled or attended by him to escape from his control or to spread to the lands of any person other than the builder of the fire without using every reasonable and proper precaution to prevent the fire from escaping, is guilty of a misdemeanor. (Health & Saf. Code, § 13000.)

tion is set out in the margin.[4] The fact that the opening statement of the affidavit does not state that plaintiff was first duly sworn is not fatal where, as here, it appears that the affidavit was "subscribed" by plaintiff and was "sworn to" before the notary whose signature is affixed. Defendant does not refer us to the code sections, the requirements of which it asserts plaintiff failed to follow. The statute involved here provides merely that the claim be verified. (Stats. 1931, ch. 1167, § 1, p. 2475.) No particular form of verification is prescribed. (*Cf.* Pol. Code, § 4076, where a prescribed form of verification is provided for claims filed against a county.) A verification is an affidavit of the truth of the matters stated. (Code Civ. Proc., §§ 446, 2009; Pol. Code, § 4076; *McCaffey C. Co.* v. *Bank of America,* 109 Cal.App. 415, 420 [294 P. 45]; *Pasqualetti* v. *Hilson,* 43 Cal.App. 718, 720 [185 P. 693].) Its object is to insure good faith in the averments or statements of a party. (*Patterson* v. *Ely,* 19 Cal. 28, 39; *Bittleston Law etc. Agency* v. *Howard,* 172 Cal. 357, 360 [156 P. 515].) The term "verified," as applied to claims against municipalities, has a settled meaning, and refers to an affidavit attached to the claim, as to the truth of the matters therein set forth. (*Patterson* v. *City of Brooklyn,* 6 App.Div. 127 [40 N.Y.S. 581, 582, 74 N.Y.St.Rep. 1009]; *Bristol* v. *Buck,* 201 App.Div. 100 [194 N.Y.S. 53, 55].) The chief test of the sufficiency of an affidavit is whether it is so clear and certain that an indictment for perjury may be sustained on it if false. (*Davis-Heller-Pearce Co.* v. *Ramont,* 66 Cal.App. 778, 781 [226 P. 972]; *Gee Chong Pong* v. *Harris,* 38 Cal.App. 214, 217 [175 P. 806]; *Kelley* v. *City of Flint,* 251 Mich. 691 [232 N.W. 407, 408].) The affidavit here meets this test and is sufficient. In passing, we note that the second paragraph in the affidavit is copied verbatim from

---

[4] "STATE OF CALIFORNIA ⎰ ss.
COUNTY OF LOS ANGELES ⎱

"The undersigned, under the penalty of perjury states:

"That the above claim and the items as therein set out are true and correct; that no part thereof has been heretofore paid, and that the amount therein is justly due this claimant, and that the same is presented within one year after the last item thereof has accrued.

EDITH E. OSBORN

Edith E. Osborn

"Subscribed and sworn to before me this 15th day of September, 1949.
HELEN HARDEN

Notary Public in and for said County and State"

Political Code, section 4076, including "that the same is presented within *one* year after the last item thereof has accrued." The statute involved here provides that the claim be filed within 90 days; and since the claim was filed within the prescribed period, the quoted part was surplusage.

The complaint contains factual allegations of all the elements essential to a cause of action under the Public Liability Act: (1) facts showing a dangerous condition of public property; (2) actual knowledge of the dangerous condition by persons having authority to remedy the condition; (3) the lapse of a reasonable time after knowledge within which to remedy the condition, or to take such action as might be reasonably necessary to protect the public against the dangerous condition; (4) failure to remedy the dangerous condition; (5) the dangerous condition was a proximate cause of the damage; and (6) presentation of a verified claim within 90 days. (*Arellano* v. *City of Burbank,* 13 Cal.2d 248, 254 [89 P.2d 113]; *Bosqui* v. *City of San Bernardino,* 2 Cal.2d 747, 759 [43 P.2d 547].) The complaint met the requirements of the statute, and was not vulnerable to a general demurrer.

In view of our conclusion, it is not necessary to consider plaintiff's contention that the facts alleged are sufficient to state a cause of action on the theory that the maintenance and operation of the dump constituted a nuisance. (See *Phillips* v. *City of Pasadena,* 27 Cal.2d 104 [162 P.2d 625]; *Los Angeles Brick etc. Co.* v. *City of Los Angeles,* 60 Cal.App. 2d 478 [141 P.2d 46]; Anno. 156 A.L.R. 718.)

The judgment is reversed with directions to overrule the demurrer and permit defendant to answer.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied May 15, 1951, and respondent's petition for a hearing by the Supreme Court was denied June 14, 1951.